Mary BAKER et al.

v.

DEPARTMENT OF EMPLOYMENT AND TRAINING BOARD OF REVIEW

v.

PAWTUCKET SCHOOL DEPARTMENT.

No. 92–577–M.P.

Supreme Court of Rhode Island.

Feb. 11, 1994.

Richard A. Skolnik, Providence, for plaintiff.

Stephen Robinson, Katherine Merolla, Pawtucket School Dept., Providence, Pat Nero, Board of Review, for defendant.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on a petition for certiorari filed by the Pawtucket School Department seeking review of a District Court judgment that reversed a decision of the Board of Review (board) of the Department of Employment and Training (DET). The board had affirmed the denial of unemployment benefits to teachers Mary Baker, Jeanne Calnan, Debra Girard, Kristen Henson, Beverly Jackson, Joan McDonald, Sheila Morgan, Carol Viscera, and Brenda Warnock (plaintiffs). The District Court found that the board had erroneously determined that the plaintiffs were teachers who had reasonable assurances of employment for the next school year and thus were ineligible for unemployment benefits pursuant to G.L.1956 (1986 Reenactment) § 28–44–68. For the reasons stated herein, we reverse the decision of the District Court and uphold the board's denial of unemployment benefits to eight of the plaintiffs, and we affirm the District Court's grant of benefits to one of the plaintiffs, Jeanne Calnan.

## I

### Background

During the 1989–1990 school year, plaintiffs were employed as teachers under one-year contracts with the City of Pawtucket School Department. On February 26, 1990, the superintendent of Pawtucket schools wrote a letter to each plaintiff, stating that at the February 27, 1990, school committee meeting, he would recommend that the school committee not renew their contracts for the 1990–1991 school year because of the anticipated return from leave of "regular" teachers or of teachers who had more seniority than plaintiffs. On February 27, 1990, the school committee did in fact vote not to renew plaintiffs' contracts, and plaintiffs were notified of this decision by letters dated February 28, 1990.

On June 13, 1990, the last day of the 1989–1990 school year, plaintiffs met with representatives from the school department. At this meeting, Dr. Emile Chevrette (Chevrette), deputy superintendent of schools, informed plaintiffs that while he was unable to tell them definitively that they would be rehired, he could assure them that there were at least twenty vacancies for the next school year. Chevrette further assured plaintiffs that before the school department hired any new teachers, it would first look to the recall list and would call back plaintiffs before other applicants. On that same day, the superintendent of Pawtucket schools sent to each plaintiff a letter reassuring that "[i]t is our expectation that you will be re-employed for the next school year."[1]

After the June 13, 1990, meeting, each plaintiff filed a claim for unemployment benefits. The director of the DET, however, determined that plaintiffs had received reasonable assurances of employment with the school department for the 1990–1991 school

---

1. All plaintiffs were in fact reemployed for the 1990–1991 school year. Eight of the nine teachers received notification on or about July 24, 1990, while the ninth teacher, Joan McDonald, was rehired on or about August 1, 1990.

year,[2] and consequently denied the claims. The plaintiffs appealed the director's decision and a referee of the board heard the case on August 10, 1990. At that hearing plaintiffs claimed entitlement to unemployment benefits from June 13, 1990, until their respective recall dates, on or about July 24, 1990. In a written decision issued on October 24, 1990, the referee affirmed the director's decision. The referee concluded that each plaintiff had received reasonable assurance of being reemployed for the 1990–1991 school year, and therefore each was barred by § 28–44–68 from receiving benefits. The referee reasoned that the teachers were informed on June 13, 1990, that the school department expected to rehire them. The plaintiffs appealed the referee's decisions to the board which, in turn, adopted and approved the referee's decisions in respect to the law and the facts in each case.

The plaintiffs appealed the board's decisions to the District Court Pursuant to G.L. 1956 (1993 Reenactment) § 42–35–15 and G.L. 1956 (1986 Reenactment) § 28–44–52. The Pawtucket School Department intervened on the appeal. After concluding that the board's decisions were "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record," the District Court reversed the board's decisions and granted benefits to plaintiffs. On April 8, 1993, this court granted the Pawtucket School Department's petition for certiorari to

review whether plaintiffs were eligible for benefits under § 28–44–68.

II

*Standard of Review*

In reviewing the decisions of the board, the District Court is limited by the standard enunciated in § 42–35–15(g) of the Administrative Procedures Act (APA).[3] Section 42–35–15 provides in pertinent part:

"(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, interferences [*sic*], conclusions, or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error or [*sic*] law;

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

**2.** One plaintiff, Carol Viscera, however, initially received approval and collected benefits. Subsequently, the DET rescinded its approval and sought repayment of the benefits paid.

**3.** Prior to the adoption of the Administrative Procedures Act, G.L.1956 (1986 Reenactment) § 28–44–52 granted the District Court jurisdiction to review decisions of the board, and § 28–44–54 defined the scope of that review. *See New England Telephone & Telegraph Co. v. Fascio,* 105 R.I. 711, 715, 254 A.2d 758, 760–61 (1969); *Whitelaw v. Board of Review, Department of Employment Security,* 95 R.I. 154, 156, 185 A.2d 104, 105 (1962). In addition, § 28–44–55 provided for appeals to the Supreme Court from a decision of the District Court. With the passage of the APA, however, a uniform and consistent approach to administrative review became available. *Fascio,* 105 R.I. at 715, 254 A.2d at 761. Thus, proceedings for judicial review of decisions of the board, claimed under § 28–44–52, are

controlled by and are considered as having been brought pursuant to G.L.1956 (1993 Reenactment) § 42–35–15 and § 42–35–16. *Madison v. Board of Review, Department of Employment Security,* 105 R.I. 69, 69–70, 249 A.2d 100, 101 (1969); *Cahoone v. Board of Review, Department of Employment Security,* 104 R.I. 503, 504 n. 1, 246 A.2d 213, 213 n. 1 (1968).

We note that the standard of review defined in § 42–35–15(g) is consistent with the standard enunciated in the antedated § 28–44–54. *See Cahoone,* 104 R.I. at 507 n. 4, 246 A.2d at 215 n. 4. Both sections require review of the record to determine whether the decision is supported by competent evidence and both prohibit the reviewing court's disturbance of findings of fact as long as such findings are supported by substantial evidence on the record. *See, e.g., DePetrillo v. Department of Employment Security,* 623 A.2d 31, 34 (R.I.1993); *Whitelaw,* 95 R.I. at 156, 185 A.2d at 105.

Accordingly, when reviewing an agency decision, the District Court must not substitute its judgment for that of the agency in regard to the credibility of witnesses or the weight of the evidence on questions of fact. *Costa v. Registrar of Motor Vehicles,* 543 A.2d 1307, 1309 (R.I.1988). Rather, the court must confine itself to review of the record to determine whether "legally competent evidence" exists to support the agency decision. *See Environmental Scientific Corp. v. Durfee,* 621 A.2d 200, 208 (R.I.1993). Thus, the District Court may "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." *Milardo v. Coastal Resources Management Council,* 434 A.2d 266, 272 (R.I.1981).

Our review on certiorari of District Court judgments rendered in proceedings brought under § 42–35–15 is limited to review of "any questions of law." Section 42–35–16. *See Barrington School Committee v. State Labor Relations Board,* 608 A.2d 1126, 1138 (R.I.1992). Under § 42–35–16, we may not weigh the evidence to resolve factual disputes. *DePetrillo v. Department of Employment Security,* 623 A.2d 31, 34 (R.I. 1993). Rather, our review must focus on whether there exists legally competent evidence to support the decision under review. *See id.* This means that we must examine the whole record to determine whether the District Court concluded properly that the board's ruling was "unsupported by substantial evidence." *See Barrington School Committee,* 608 A.2d at 1138. Without reliable, probative, and substantial evidence on the whole record to sustain the board's findings, we would be constrained to affirm the judgment of the District Court. *See id.*

### III

#### Discussion

The intended purpose of Rhode Island's unemployment statute is to assist unemployed individuals who are seeking work. *See Harvey v. Director of Department of Employment Security,* 120 R.I. 159, 167–68, 385 A.2d 1057, 1062 (1978). The statute, however, precludes payment of benefits to school employees who are out of work only for holiday and summer recesses. Section 28–44–68. The rationale for this limitation is that school employees can plan for those periods of unemployment and thus are not experiencing the suffering from unanticipated layoffs that the employment-security law was intended to alleviate. *Preziosi v. Department of Employment Security, Board of Review,* 529 A.2d 133, 138 (R.I.1987).

In order to distinguish between school employees who meet the criteria for classification as "unemployed" and those that are on summer or holiday recesses, the General Assembly enacted § 28–44–68. That section provides in pertinent part:

"With respect to services performed * * * in an instructional, research, or principal administrative capacity for an educational institution * * * benefits shall not be paid based on those services for any week of unemployment commencing during the period *between* two (2) successive academic *years* * * * to any individual *if* that individual performs those services in the first of such academic years * * * and if there is a contract *or a reasonable assurance that such individual will perform services in any such capacity* for any educational institution *in the second of those academic years or terms.*" (Emphasis added.) Section 28–44–68(1).

As evident from this statutory language, school teachers who have a contract or a reasonable assurance that they will teach in the upcoming school year are deemed to be between years or terms and therefore ineligible for unemployment benefits. At the close of the 1989–1990 school year, none of plaintiffs had contracts for the 1990–1991 school year; accordingly, their eligibility for unemployment benefits centers on whether they were given "reasonable assurances" of employment.

Under § 28–44–68, "reasonable assurance does not mean a guarantee of future employment." *Preziosi,* 529 A.2d at 137. "The reasonable assurance requirement may be satisfied simply by notice of the fact that the school department may have openings * * * and that the particular teacher may be called for such work." *Id.* The determination of

364

reasonable assurance is left to the board after it examines all relevant facts. *Id. See Krupa v. Murray,* 557 A.2d 868, 869 (R.I. 1989). The conclusion in this case, then, and in others like it, must rest on a fact-specific analysis.

The District Court concluded that the June 13, 1990, "expectation" letter must be reviewed in light of the February 28, 1990, termination letter. The District Court found that "[s]uch an absolute statement [of termination] can logically be superseded only by an equally unequivocal offer of a position." The District Court went on to determine that the June 13, 1990, expectation letter was insufficient to grant reasonable assurance under § 28–44–68. We disagree with the District Court's findings in regard to eight of the nine plaintiffs because our review of the record reveals that there exists sufficient legally competent evidence in addition to the June 13, 1990, letter to support the finding that these plaintiffs received reasonable assurances of employment. As to the ninth plaintiff, Jeanne Calnan, we are of the opinion that the record lacks reliable, substantial, and competent evidence to support the finding that she received reasonable assurance of employment.

A

*Reasonable Assurance*

■ In reaching its conclusion in regard plaintiffs Mary Baker, Debra Girard, Kristen Henson, Beverly Jackson, Joan McDonald, Sheila Morgan, Carol Viscera, and Brenda Warnock, the District Court failed to afford sufficient weight to other elements of reasonable assurance by the school department. *See Preziosi,* 529 A.2d at 137 (board determines what constitutes reasonable assurance after examination of all relevant facts). The record reveals that the June 13, 1990, letter was not the sole assurance given to plaintiffs. As noted above, on June 13, 1990, in addition to receiving a letter from the superintendent of schools, the teachers were informed that twenty vacancies existed for the upcoming year, that they (plaintiffs) had priority for these positions, and that uncertainty over the retirement program, as well as a lack of firm funding, had necessitated the distribution of

layoff notices. The plaintiffs were also told the specifics of the recall process and were told that the school department expected to recall them. In fact, all plaintiffs, including Jeanne Calnan, were subsequently recalled within two months of this meeting.

On appeal, plaintiffs also argued that the totality of the circumstances leading up to and surrounding the June 13, 1990, meeting gave the teachers *no* assurance of reemployment, let alone reasonable assurance. In particular, plaintiffs alleged that the school department's statement that it expected to recall plaintiffs was undermined by the school department's advice to apply for unemployment benefits and by the notice from the school department concerning plaintiffs' coverage for health-insurance benefits beyond the given term. On the one hand, plaintiffs were told they would be rehired, but on the other hand, they were given information concerning preparations for unemployment.

Although we agree that the circumstances surrounding the June 13, 1990, meeting are proper factors to consider when determining whether plaintiffs received reasonable assurance of employment, we are of the opinion that the board did not misconstrue or ignore these factors in reaching its conclusion.

We note first that, contrary to plaintiffs' allegation, it is not clear that the teachers were actually told by the school department representatives on June 13, 1990, to apply for unemployment benefits. The record contains contradictory testimony as to the substance of the June 13, 1990, discussion regarding this issue. At the August 10, 1990, hearing, Chevrette testified that after one of the teachers instructed and encouraged plaintiffs to apply for unemployment benefits, a school department representative informed the teachers to do as they must but to be aware that the school department would do what it had to—contest the claims.

Even if we were to assume that a school department representative had in fact told the teachers to apply for unemployment benefits, such advice cannot be taken in isolation from the rest of the meeting. Chevrette's testimony clearly demonstrates that the pur-

pose of the June 13, 1990, meeting was to answer the teachers' questions regarding their positions during the upcoming year as well as their current status with the school department. According to Chevrette, he continued to provide the teachers with as much information as he had available, including a recall list, and to reassure them of employment during the 1990–1991 school year. The plaintiffs, in their testimony on August 10, 1990, agreed in part with Chevrette's version of the substance of the meeting. In light of Chevrette's testimony, it was not clearly erroneous for the board to conclude that the teachers were given reasonable assurances of employment even if they were advised of their right to file for unemployment benefits.

Furthermore, we are of the opinion that the board gave proper consideration to the fact that the teachers were given information about the health insurance and the method of continuing coverage. On appeal, plaintiffs argued that any cautious expectation of work was crushed by the June 13, 1990, revelation that medical coverage would be available after September 30, 1990, "at your own expense." On appeal plaintiffs questioned: "If the [school department] 'reasonably' believed that the teachers would be re-employed, then why did it feel compelled to warn about future medical coverage?" The simple answer is that the school department was unable at the time of the "warning" to definitively grant the teachers employment for the upcoming year. A reasonable and valid concern of the teachers in the event they were not recalled would be medical coverage. Because the school department could not guarantee employment, it could not guarantee health-insurance coverage, even though it provided the school department's policy at a meeting that reassured plaintiffs about possible employment in the upcoming fall term.

In sum, our review of the entire record reveals that legally competent evidence supports the board's denial of benefits to plaintiffs. *See DePetrillo*, 623 A.2d at 34. Not only were plaintiffs informed by letter that the school department expected to rehire them in the upcoming year, but they were also reassured by information concerning va-

cancies and job prospects. Based on the entire record, we are unable to conclude that it was clearly erroneous for the board to find that plaintiffs were given reasonable assurances of employment. The District Court, therefore, erred by substituting its judgment for that of the board in regard to whether plaintiffs received reasonable assurance of employment. *See Berberian v. Department of Employment Security*, 414 A.2d 480, 482 (R.I.1980). The reliable, probative, and substantial evidence on the whole record is competent to support a finding of reasonable assurances. Thus, denial of unemployment benefits pursuant to § 28–44–68 was proper. *See DePetrillo*, 623 A.2d at 34.

**B**

*Jeanne Calnan*

The circumstances in the case of plaintiff Jeanne Calnan (Calnan) are distinguishable from those of the other plaintiffs because there was limited employment opportunity in the only area of her certification, speech pathology.

█ At the August 10, 1990, hearing, Chevrette testified that as of June 13, 1990, there were two senior teachers certified in speech pathology who would be returning to work in the fall. Calnan testified that she was informed that both speech pathologists would be returning. Chevrette did not tell Calnan that although it was not official, he had a strong suspicion that one of the returning speech pathologists would be resigning to take a position with another school department. Chevrette did not know until late July that the second speech pathologist would be extending her leave. Therefore, according to Chevrette's own testimony: "Until [Calnan] was recalled the other evening [July 24, 1990] I had no assurance that I would have a job for her." Calnan could substitute on a day-to-day basis, but, Chevrette noted, the school department only used speech pathologists as substitutes for two-to-three week absences.

It is clear from these facts on the record that as of June 13, 1990, Calnan had not been given reasonable assurance of employment. Unlike the other plaintiffs who had the op-

portunity to fill approximately twenty vacancies, Calnan was limited to the single possible job as a speech pathologist and was told that two teachers were returning to fill this position. Calnan, with her limited certification, is thus distinguishable from the other plaintiffs. The board was clearly erroneous in finding that Calnan was granted reasonable assurance of employment. The substantial, reliable, and probative evidence on the record supports a contrary finding.

## IV

### *Conclusion*

Accordingly, for these reasons we grant in part and deny in part the petition for certiorari. We quash in part the judgment of the District Court insofar as we affirm the judgment of the board with respect to eight plaintiffs, while we affirm the District Court's award of benefits to Jeanne Calnan.