Patricia KACHANIS et al.

v.

**BOARD OF REVIEW, DEPARTMENT OF EMPLOYMENT AND TRAINING et al.**

No. 93–104–M.P.

Supreme Court of Rhode Island.

March 14, 1994.

554

Gerard E. O'Neill, Wakefield, for plaintiffs.

William G. DeMagistris, Office of Higher Educ., Louis Vallone, Providence, for defendants.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on a petition for certiorari filed by the State of Rhode Island and the Rhode Island Board of Regents for Elementary and Secondary Education (board of regents) seeking review

1. The department is responsible for the establishment, maintenance, operation, and expansion of

of a District Court judgment that reversed a decision of the Board of Review (board) of the Rhode Island Department of Employment and Training (DET). Workers in the public school-lunch program in the cities of Pawtucket and Providence had applied for unemployment benefits for the days in early September 1991 that schools were closed in those cities because of teachers' job actions. The DET had denied, and the board had affirmed the denial of benefits to Patricia Kachanis and other employees (plaintiffs) of the Rhode Island Department of Elementary and Secondary Education's school-lunch program (school-lunch program). On review, the District Court found that the board had erroneously determined that the plaintiffs were ineligible for unemployment benefits pursuant to G.L.1956 (1986 Reenactment) § 28–44–68. The primary issue for our review was whether, on those September days when schools were closed, the plaintiffs were between school terms and, therefore, precluded by § 28–44–68 from collecting unemployment benefits. For the reasons stated herein, we hold that the plaintiffs were between terms, and consequently, we quash the decision of the District Court and uphold the board's denial of unemployment benefits to the plaintiffs.

I

### Background

The plaintiffs are school-lunch workers who performed services during the 1990–1991 school year. It is undisputed that prior to the end of the school year, plaintiffs were given "reasonable assurance" (see § 28–44–68(2)(A)) that each would be reemployed by the school-lunch program in Pawtucket or Providence during the 1991–1992 school year.

The 1991–1992 school year was scheduled to begin in Pawtucket on September 3, 1991, and in Providence on September 4, 1991. Helen Kawka (Kawka), president of the union that represents school-lunch workers, testified before the board that the Rhode Island Department of Elementary and Secondary Education (department),[1] as is customary,

the school-lunch program, G.L.1956 (1988 Reen-

did not formally notify each lunch worker of the date to report to work. Rather, Kawka testified, only the head cook of each school system was formally notified to begin on September 3, and each head cook was allowed to notify a limited number of lunch workers.

On September 3, 1991, according to Kawka, approximately six lunch workers reported to work in the Pawtucket school system and about sixty in the Providence school system.[2] But, in spite of their efforts, for students in the two cities, there was nourishment for neither their bodies nor their minds. According to plaintiffs, the schools were closed on September 4, 1991, because of "a job action on the teachers' part." Some of the lunch workers who reported to work on September 3 also reported to work on September 4, prior to the closing on that day. Lunch workers were paid for services rendered on September 3 and September 4.

None of the plaintiffs was permitted to work until Pawtucket and Providence schools officially opened on September 9 and September 12, respectively, on which dates all school-lunch workers commenced work.

The plaintiffs subsequently filed claims with the DET for unemployment benefits or "waiting period credit" for the period between the scheduled start of the 1991–1992 Pawtucket and Providence school years and the actual dates of commencement of work. On or about September 19, 1991, the director of the DET denied plaintiffs' claims.

The plaintiffs appealed that decision to the board. After a hearing on December 11, 1991, the board, by a vote of two to one, affirmed the DET director's decision.[3] On February 14, 1992, plaintiffs appealed the board's decision to the District Court.

The District Court reversed the board's decision on February 2, 1993. In response, the State of Rhode Island and the board of regents filed a petition for issuance of a writ of certiorari, which this court granted on April 8, 1993.

II

*Standard of Review*

In reviewing decisions of the board, the District Court is limited by the standard set forth in G.L.1956 (1993 Reenactment) § 42–35–15(g) of the Administrative Procedures Act, which provides in pertinent part:

"(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, interferences [*sic*], conclusions, or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error or [*sic*] law;

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

Therefore, when reviewing a decision of an agency, the District Court may not substitute its judgment for that of the agency with respect to the credibility of witnesses or the weight of the evidence on questions of fact.

actment) § 16–8–9. *See* §§ 16–8–8, 16–8–10, and 16–8–11.

2. Although a starting date for school is scheduled, Kawka testified that school-lunch workers "are to read the paper to give the exact date of the school opening. * * * [T]hey commence their school year * * * by the publication in the paper stating when school will open." Kawka further clarified, "It's a last minute situation, and you're notified day by day. You go day by day."

3. Board member Ronald Coia filed a dissenting opinion in which he reasoned that because the school year commenced for plaintiffs prior to the actual starting dates, plaintiffs no longer were "between-terms" and thus were not precluded from collecting unemployment benefits by G.L. 1956 (1986 Reenactment) § 28–44–68.

557

*Costa v. Registrar of Motor Vehicles,* 543 A.2d 1307, 1309 (R.I.1988). "Rather, the court must confine itself to review of the record to determine whether 'legally competent evidence' exists to support the agency decision." *Baker v. Department of Employment and Training Board of Review,* 637 A.2d 360, 361, (R.I., 1994). Thus, the District Court may "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." *Milardo v. Coastal Resources Management Council,* 434 A.2d 266, 272 (R.I.1981).

■■■ Our review of District Court judgments rendered in proceedings brought under § 42-35-15 is limited to "any questions of law." *Baker,* 637 A.2d at 361; § 42-35-16. Under § 42-35-16, this court cannot weigh the evidence to resolve factual disputes. *DePetrillo v. Department of Employment Security,* 623 A.2d 31, 34 (R.I.1993). Rather, our review must center on whether legally competent evidence exists in the record to support the decision under review. *Baker,* 637 A.2d at 361. Accordingly, we review the entire record to ascertain whether the District Court's conclusion that the board's ruling was "unsupported by substantial evidence" was proper. *Id.* "Without reliable, probative, and substantial evidence * * * to sustain the board's findings, we would be constrained to affirm the judgment of the District Court." *Id.*

### III

#### Board and District Court Decisions

■■ The board had determined that plaintiffs were between terms from the end of the 1990–1991 school year until the *actual start* of the 1991–1992 Pawtucket and Providence school years on September 9 and 12, respectively. In reversing the board, the District Court found, *inter alia,* that the 1991–1992 school term had commenced for purposes of § 28-44-68 on September 3, 1991, in Pawtucket and on September 4, 1991, in Providence. Accordingly, the District Court reasoned, plaintiffs ceased to be between terms on those dates and were, therefore, no longer precluded by § 28-44-68 from collecting unemployment benefits. The District Court

judge found that plaintiffs were entitled to benefits or waiting-period credit to alleviate the "economic suffering" experienced between September 3 and September 9, 1991, by Pawtucket plaintiffs and between September 4 and September 12, 1991, by Providence plaintiffs.

On appeal, the board of regents argued that "the reference to 'academic years or terms' in § 28-44-68 must be construed to apply to the rescheduled school year [or term]," so that for purposes of § 28-44-68, the 1991-1992 school year started on September 9, 1991, in Pawtucket and on September 12, 1991, in Providence. Accordingly, the board of regents argued that from September 3 to September 12 plaintiffs were still "between academic terms" and therefore were disqualified by § 28-44-68 from receiving unemployment compensation. We agree.

### IV

#### Discussion

It is undisputed that plaintiffs are subject to § 28-44-68(2)(A), which provides:

"Compensation * * * shall be denied to any individual for any week which commences during a period between two (2) successive academic years or terms if that individual performs those services in the first of those academic years or terms and there is a reasonable assurance that such individual will perform those services in the second of those academic years or terms."

Consequently, employees of educational institutions may not collect unemployment benefits "for any week that commences during a period *between two successive academic years or terms.*" (Emphasis added.) *Krupa v. Murray,* 557 A.2d 868, 869 (R.I.1989).

The record conclusively establishes that plaintiffs received "reasonable assurance" that they would be employed as lunch workers for the 1991-1992 academic year and thus would be ineligible for benefits under § 28-44-68(2)(A). School employees "who have a contract or a reasonable assurance that they will [be employed] in the upcoming school year are deemed to be between years or

terms and therefore ineligible for unemployment benefits." *Baker*, 637 A.2d at 362.

The decisive determination, therefore, is whether the record contains sufficient evidence to support the board's conclusion that although school did not begin as scheduled, plaintiffs—pursuant to § 28–44–68—remained "between two (2) successive academic years or terms" until the actual start of school in Pawtucket and Providence. To reach our conclusion, we begin by interpreting § 28–44–68.

■ When interpreting a legislative enactment, this court must establish and effectuate legislative intent. *Gilbane Co. v. Poulas*, 576 A.2d 1195, 1196 (R.I.1990). "When the enactment's language is clear and unambiguous, the statute must be applied literally, without extension or construction." *Kirby v. Planning Board of Review*, 634 A.2d 285, 290 (R.I.1993). Section 28–44–68 is clear and unambiguous, *Krupa*, 557 A.2d at 869, and, consequently, is subject to literal interpretation, provided such an interpretation is consistent with the legislative intent underlying the enactment, *see Sugarman v. Lewis*, 488 A.2d 709, 711 (R.I.1985).

By its terms, § 28–44–68 delineates the employment-security benefits payable to employees in elementary and secondary schools. Applied literally, the general and unqualified language of § 28–44–68(2)(A) prohibits employees of educational institutions from collecting unemployment benefits for the period between the end of one school year and the start of the next irrespective of when the former ends and the latter begins. There is no limiting language restricting the application of § 28–44–68 solely to the period between the *scheduled* end of one academic term and the *scheduled* start of the successive term. We note that the General Assembly provided flexibility in scheduling the school year by allowing each city and town to establish its own 180–day[4] calendar. General Laws 1956 (1988 Reenactment) § 16–2–2. Our interpretation provides the flexibility needed to encompass the many possible between-terms situations that can arise given

the teachers' world of "annual contracts" that is created by G.L.1956 (1988 Reenactment) § 16–13–2.

The method of notifying school-lunch workers to report to work following a summer recess in fact recognizes that a school year does not begin until it *actually begins*. According to Kawka, the department does not formally notify each school-lunch worker of the precise date on which he or she must report to work. Rather, the department notifies each lunch worker that there will be no work "until the opening of school," and each worker must monitor the newspaper to ascertain the exact date on which school will begin. On appeal, in support of their contention that they had experienced "the suffering which the employment security law was intended to alleviate," plaintiffs maintained that their "summer recess had ended" and that their subsequent "unemployment" was "sudden and unexpected" so that they "could not have planned for [it]." The plaintiffs' arguments, however, are belied by Kawka's testimony that school-lunch workers know from the time summer recess begins that the precise start of the next school term never is certain but often is disclosed at the last minute. Kawka also testified that lunch workers anticipate the start of the school year on a "day-by-day" basis. As a result, Kawka concluded, workers must remain "involved" and "keep listening."

Rhode Island's employment-security act was designed "to assist in protecting the public against the ill effects of unemployment," G.L.1956 (1986 Reenactment) § 28–42–2, and "to assist unemployed individuals * * * desperately looking for work," *Preziosi v. Department of Employment Security, Board of Review*, 529 A.2d 133, 138 (R.I. 1987). Educational employees who are reasonably assured of employment in an upcoming academic year, but who are inconvenienced by a delay in the scheduled start of that year because of a teachers' contract dispute, do not fit into these categories because they "are not truly experiencing the suffering our unemployment-security law was

---

4. In the event of emergency or epidemic, a local school committee may (with the approval of the board of regents) reduce the school year to no fewer than 170 days. G.L.1956 (1988 Reenactment) § 16–2–3.

**558**

intended to alleviate." *Id.* Furthermore, because plaintiffs intended and expected to be called back to work on a day's notice, under the provisions of § 28–44–12, they would be ineligible for benefits because they would not be "available" for work that might be offered. Had plaintiffs not resumed their jobs, however, each would have been "entitled to a retroactive payment of the compensation * * * denied solely by reason of" the between-years limitation. Section 28–44–68(2)(B).

The 1991–1992 school year was undisputedly "scheduled" to begin on September 3, 1991, in Pawtucket and on September 4, 1991, in Providence but actually did not commence until September 9 in Pawtucket and September 12 in Providence. Indeed, until the later dates, no classes were held and no lunches were served in either place. The plaintiffs had been reasonably assured in 1990–1991 of employment in the 1991–1992 school year, and all began working when school actually commenced for the school year. Therefore, pursuant to our interpretation of § 28–44–68(2)(A), the board's conclusion that the plaintiffs remained "between academic terms" until the actual start of the 1991–1992 school year is supported by substantial evidence in the record. The plaintiffs, therefore, are disqualified from collecting unemployment benefits for the period between September 3 and September 12.

Accordingly, for these reasons we grant the petition for certiorari. We quash the judgment of the District Court, we affirm the judgment of the board, and we remand the papers in this case to the District Court with our decision duly endorsed thereon.