[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is a request by Defendant Daniel Biechele ("Defendant") for pretrial subpoenas pursuant to R.I. Super. R. Crim. P. 17(c). The Defendant seeks to compel the Rhode Island Department of the Attorney General, the Rhode Island State Fire Marshal, and each of the thirty-nine cities and towns in Rhode Island to produce all records of pyrotechnic permits issued pursuant to R.I. Gen. Laws 1956 § 11-13-1, dating between January 1, 1980 and February 20, 2003. The State objects to the motion on the grounds that it is irrelevant and over burdensome. The Defendant and the State submitted memoranda supporting their position and argued before the Court on October 14, 2005.
 RULE 17(C) SUBPOENAS
Rule 17(c) was not designed as a means of discovery, but rather a tool to review specific, identifiable evidence before trial so as to expedite the trial process. State v. DiPrete, 698 A.2d 223, 226 (R.I. 1997). Rule 17(c) provides
 "Subpoena. — * * *
 (c) For Production of Documentary Evidence and of Objects. A subpoena may also command the person to whom it is directed to produce the books, papers, documents, or tangible things designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys."
Discretion to allow a pretrial subpoena belongs to the trial court, as the inquiry is often fact-intensive. Diprete, 698 A.2d at 226. However, the Rhode Island Supreme Court has adopted a specific standard that the moving party must meet before such a request is granted. In order to require the production, the moving party must show
 "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that failure to obtain such inspection may tend unreasonably to delay trial; and (4) that the application is made in good faith and is not intended as a general `fishing expedition.'" Diprete, 698 A.2d at 225 (quoting United States v. Nixon, 418 U.S. 698, 699-702 (1974)).
The initial hurdle of relevancy is shown when there is a "sufficient likelihood" that the documents requested will be relevant to the offense charged. Nixon, 418 at 700. "Mere speculation as to the content of documents is hardly a showing of relevance." United States v.Concemi, 957 F.2d 942, 949 (1st Cir. 1992).[1]
 DEFENDANT'S ARGUMENT
The pertinent part of the Defendant's argument states: "[f]irst, these materials are relevant to whether Mr. Biechele's actions were such a departure from the standard of care in the industry as to constitute gross/criminal negligence. . . . Second the materials bear on the issue of duty: the nature and quality of Mr. Biechele's obligation (if any) to obtain a permit for the use of pyrotechnics. The existence or absence of such duty may be found in the practical application of the law governing the permitting of pyrotechnics, as well as its letter." (Motion to Issue Subpoenae at 1-2.) The defense anticipates the request will uncover few, if any, permits issued pursuant to §11-13-1. Allegedly, this result will support both the contention that no duty to procure a permit exists under the statute and also will erode the inference of criminal negligence invoked by the failure to procure a permit. There has been no criminal case cited to the Court which discuses how failing to follow a criminal statute relates to the existence of or kind of a duty which is created by the statute. The Defendant relies onLarporte v. Cook, a civil tort case. 22 R.I. 554, 48 A. 798
(1901). In this case, the court allowed in evidence purporting to show custom and usage in the construction industry regarding a plaintiff's claim of negligence resulting in personal injury. Id. at 547, 48 A.2d at 799.
 STATE'S RESPONSE
The State first argues that the requests are irrelevant, as other's behavior would not affect the nature or quality of the Defendant's duty to obtain a permit. The State asserts compliance with the statute is mandatory for all persons, under all circumstances. The State further emphasizes the burdensome nature of the breadth of the request with respect to its limited resources and the resulting expense for the State and local communities. Finally, the State notes that the Attorney General does not have the power to issue the permits in question.
 ANALYSIS
The Defendant is not being sued in tort, but rather is facing the criminal charge of involuntary manslaughter.[2]
Involuntary manslaughter is defined as "an unintentional homicide without malice aforethought, committed either in performance of an unlawful act not amounting to a felony or in the performance of a lawful act with criminal negligence." State v. Hallenbeck, 878 A.2d 992,1008 (R.I. 2005) (quoting State v. Hockenhull, 525 A.2d 926,929 (R.I. 1987)). Criminal negligence is "conduct which was such a departure from what would be that of an ordinarily prudent or careful man in the same circumstances as to be incompatible with a proper regard for human life, or an indifference to consequences."State v. Robbio, 526 A.2d 509, 513 (R.I. 1987). Criminal negligence is negligence that is aggravated, culpable, or gross. State v. Ortiz, 824 A.2d 473, 485-486 (R.I. 2003).
Our Supreme Court has stated: "there is always, of course, a duty to refrain from acting recklessly toward another person." State v. McLaughlin, 621 A.2d 170, 175
n. 3 (R.I. 1993). In order for an omission to be criminally negligent, there must have been a duty to act. Id. at 175. The State seeks to prove the totality of Defendant's acts and omissions in the possession and use of pyrotechnics on the night of the incident was criminally negligent. Failure to procure a permit under § 11-13-1 is simply one omission of the multiple acts and omissions the State identifies to build its case for criminal negligence. (State's Response to Daniel M. Biechele's Motion for Bill of Particulars at 2-3.) (Of the fifteen acts or omissions identified by the State supporting the criminal negligence theory, only three pertain to the duty to obtain a permit). The narrow question before the Court is whether evidence of other individuals' failure to procure a permit is relevant to either disprove the duty to obtain a permit by statute or prove that Defendant's conduct did not rise to the level of criminal negligence.
 Duty to Obtain Permit or Approval Mandated by§ 11-13-1
If the proper course of action required by the statute was not readily ascertainable, then the defendant could not be responsible for his failure to act under a criminal negligence theory. State v. Wheeler, 496 A.2d 1382,1391 (R.I. 1985). A statute creates such a duty when it clearly mandates the defendant must act. Id. The mandate to procure a permit under § 11-13-1 is clear. Section11-13-1 reads:
 "Sale, use or possession of fireworks — (a) No person shall . . . possess or have under his or her control, use or explode, or cause to explode for exhibition or amusement any fireworks D.O.T. Class "B" or "C" (which term for the purposes of this section is defined and declared to be any combustible or explosive composition, or any substance or combination of substances or article prepared for the purpose of producing a visible or audible effect by combustion, explosion, deflagration or detonation . . .) . . . except that permits for use of D.O.T. Class "B" or "C" fireworks for commercial display may be issued in accordance with provisions for the Rhode Island Fire Safety Code, chapters 28.1 — 28.39 of title 23. . . . Fireworks display by any . . . group of individuals is permitted, on condition that the display shall be made by a competent operator approved by the local fire authority . . . and will not be hazardous to persons or property. . . .
 (b) Any person . . . using or having in his or her possession without a permit with intent to use D.O.T. Class "C" fireworks with a value of under five hundred dollars ($500) shall be guilty of a misdemeanor and shall upon conviction be fined not exceeding five hundred dollars ($500) for each offense and/or imprisoned for not more than one year for each offense." § 11-13-1(2002)
In order to conclude the Defendant's actions were not in conformity with § 11-13-1, the State would not only have to show the Defendant possessed, controlled or exploded Class B or C fireworks, but also that a permit was not issued in accordance with title 23. Section 23-28.11-3
states:
 "Permits. — (a) Permits to possess and display commercial fireworks or pyrotechnics shall be issued by the local fire authority on forms provided by the fire marshal.
 (b) No permit to possess and display fireworks or pyrotechnics shall be issued by the local fire authority until the applicant has first obtained a valid certificate of competency from the state fire marshal. For purposes of this chapter, "pyrotechnics" means a chemical mixture, including pyrotech-compositions intended to produce a visible and/or audible effect by combustion, deflagration or detonation before a proximate audience closer than allowed for outdoor fireworks displays as permitted under this chapter. All pyrotechnics shall be in accordance with the requirement of the National Fire Protection Standard 1126, entitled `Use of Pyrotechnics Before a Proximate Audience', 1992 Edition, and the requirements of this chapter." § 23-28.11-3 (1997).
Section 23-28.11-4 requires that an applicant for the certificate of competency must be qualified by examination. Section 11-13-1 clearly prohibits possession, use, or detonation unless the specific display is approved by the local fire authority or the individual meets the requirements of chapter 23. "[I]n enacting a statute the Legislature is presumed to have intended that every word, sentence, or provision has some useful purpose and will have some force and effect." State v. Benoit, 650 A.2d 1230, 1232 (R.I. 1994) (citing State v. Reis, 430 A.2d 749, 752 (R.I. 1981)). Further, the Supreme Court has held on numerous occasions that when a statute has a plain, clear, and unambiguous meaning the words are given full effect in accordance with the plain expressed intent. Rhode Islandv. Labor Relations Board, 703 A.2d 1095, 1097 (R.I. 1997) (citations omitted). The mandatory language in §11-13-1 renders the Defendant's argument that the statute may not create a duty unavailing. The result of the subpoena request could in no way overcome the clear, unambiguous language requiring a permit. Therefore, the Court holds the information requested in the Defendant's 17(c) motion is irrelevant to determining whether there is a duty under the statute to apply for and receive a permit for the possession and display of pyrotechnics.
 Nature of Duty Unaffected by Members in theCommunity
Other individuals' failure to follow the statute's mandate does not change the defendant's duty under the statute. Rather, such pervasive non-compliance might lead to the conclusion that many pyrotechnic users were not acting as prescribed by statute. It is well settled that
 "[w]hen a person engages in conduct which constitutes a crime, it is no less a crime because it is customary for other persons in the neighborhood to engage in the same conduct. It matter not that the custom may have existed in the community over a long period of years. . . . An existing crime remains in force until repealed; therefore, an offender may be prosecuted there under even though over a period of many years no one else has been prosecuted. 1 Wharton's Criminal Law § 50 (15th ed.).
It is axiomatic that the culpability of Defendant's actions or inactions were in no way affected by others acting or failing to act in a similar manner. Therefore, the results of the request, if granted, could not bolster the Defendant's defense in this matter.
The Court also notes the burdensome nature of the request. The Court is mindful that the State and local government communities have limited resources which should not be expended to satisfy subpoena requests that the Court has determined fail to meet the legal standards required to authorize the issuance of the 17(c) subpoenas.
 CONCLUSION
For the foregoing reasons, the Court denies the Defendant's motion to issue subpoenas prior to trial.
[1] Because the Rhode Island Rule is virtually identical to its federal counterpart, state courts look to federal court interpretations for guidance. State v.DiPrete, 698 A.2d at 225 (R.I. 1997).
[2] Therefore, the defendant's reference to the civil case of Laporte v. Cook is not relevant, as criminal culpability and civil liability are not analogous in this situation. 22 R.I. 554, 48 A. 798 (1901).