[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Appellant, Sterry Street Towing, Inc. ("Sterry Street") appeals a decision of the Division of Public Utilities and Carriers (the "PUC"), disallowing certain unsubstantiated and impermissible overcharges made to Complainant, Devon Cover Trucking ("Devon Cover") for a tow and fining it $2,000 for what the PUC considered a willful violation of the PUC's rules and regulations. Appellant also appeals the decision of the PUC to deny its second motion for reconsideration of that decision. This Court has jurisdiction pursuant to G.L. 1956 § 42-35-15. After reviewing the entire record and considering the arguments of all parties, this Court affirms the decision of the PUC.
 Facts and Travel
On May 2, 2002, a tractor trailer semi-trailer unit owned by Devon Cover Trucking ("Devon Cover"), operated by Mr. David Hudson, was traveling on Route 95 on the S-curve in Pawtucket, Rhode Island at approximately 9:30 p.m. Approximately 150 feet north of the Broadway Street overpass, the tractor trailer lost control and rolled over onto its passenger side. The Rhode Island State Police contacted Sterry Street to tow and recover the tractor trailer.
Sterry Street billed Devon Cover for services rendered that evening. The towing bill submitted to Devon Cover was itemized as follows:
 3 HD Tow Trucks — 6 hours at $300.00 per hour = $5,400.00
 1 Med Duty Truck — 6 hours at $75.00 per hour = $450.00
1 Air bag Recovery Truck — 1st hour at $3000.00
and additional 3 hours at $950.00 per hour = $2850.00
Total = $5850.00
 1 Recovery Van with all related recovery equipment, straps, hooks, chains, shackles, generator, and light equipment — 6 hours at $125.00 per hour = $750.00
1 Recovery coordinator — 6 hours at $125.00 = $750.00
5 Extra men — 6 hours at $55.00 × 5 men = $1650.00
Restore Equipment to Order
3 HD Tow Truck × $150.00 = $450.00
1 Air bag truck — 1.5 hours at $475.00 = $712.50
1 Recovery van — 2 hours at $62.50 = $125.00
Restore Med Duty Truck — $37.50 = $37.50
Separated truck and trailer = $300.00
1 hour 1 HD Tow truck
Move Trailer to lot to transfer load = $125.00
5 Bags speedy dry = $60.00
 4 Extra men to transfer load — 3 hours at $65.00 × 4 = $780.00
Storage fee tractor trailer — $80.00 per day
Administrative fee = $60.00
Devon Cover paid $10,000 for the release of the truck on May 24, 2002.
Subsequently, Devon Cover filed a complaint with the PUC, alleging that Sterry Street submitted to Devon Cover a bill that had charges "in excess of that of the applicable tariff allowed by the Public Utilities Commission." Specifically, Devon Cover alleged that Sterry Street charged for "restoration of equipment to order after the same had been returned to the premises," and that "there was a charge assessed for an additional tow truck that was not on the premises.
On November 1, 2002, Devon Cover and Sterry Street appeared for a hearing before the PUC's Hearing Officer, Patricia F. Adams. The purpose of the hearing was to determine whether Sterry Street's charges to Devon Cover were in violation of enforcing just, reasonable, and reasonably compensatory rates or charges pursuant to G.L. 1956 § 39-12-12. On January 23, 2003, Hearing Officer Adams issued an order finding that Sterry Street was in violation of § 39-12-12, for charges of rental equipment from a separate corporate entity, and for unsubstantiated overcharges for extra laborers.
Specifically, the Hearing Officer found that there was no evidence to show that there were five additional men participating in the recovery of the tractor trailer for 6 hours and held that this charge was impermissible. (Decision at 6.) In addition, the Hearing Officer found that there was no evidence on the record indicating how many days the tractor trailer was in storage and the size of the tractor trailer. (Decision at 8.) The Hearing Officer further found that the storage charge of $80 per day for the storage of the tractor trailer would be in violation of Sterry Street's tariff, and hence impermissible. Id. In regards to the Administration fee, the Hearing Officer found no basis for the charge in Sterry Street's tariff; as such, this charge was not permitted. Id. For the charges relating to the air bag recovery truck and the recovery van with related recovery equipment, the Hearing Officer found that the "purported rental of equipment was a sham," and further found that there was no separate provision for the use of air bag recovery in Sterry Street's tariff. (Decision at 9.) Additionally, the Hearing Officer found that the "restore to order" air bag truck charge was impermissible due to the rental sham. Id. Lastly, the Hearing Officer also found that the recovery van charge was not permitted because the Hearing Officer found that the vehicle was not in use at the recovery.Id.
Although the Hearing Officer disallowed $9,147 from the bill, she found that $8,748 was properly charged. (Decision at 11.) However, in a post-hearing memorandum, Devon Cover agreed to 22 days of storage at $80 per day. Id. Thus, the Hearing Officer found allowable charges in the total of $10,238. Id. Due to the fact that Devon Cover had remitted $10,000 to Sterry Street, the balance owing to Sterry Street, was therefore in the amount of $238. Id. Pursuant to G.L. 1956 § 39-12-36, the PUC fined Sterry Street a total of $2,000. Id.
On February 5, 2003, pursuant to PUC Rule 31 (d), Sterry Street filed a motion for reconsideration asking PUC for an opportunity to explain the rental agreement between Sterry Street's two corporations. The PUC's Hearing Officer granted Sterry Street's motion and ordered another hearing to allow Sterry Street and Devon Cover to address the "reasonableness and propriety of billed charges."
An evidentiary hearing was held on May 7, 2003. Again, the Hearing Officer found that there was no evidence regarding the common charges assessed for the rental of the equipment between Sterry Street's two corporations. In addition, the Hearing Officer found that Sterry Street did not offer testimony regarding the "length of time of the extra laborers versus the hours worked on the restoration of equipment, transfer load, etc. . . ." On June 6, 2003, the PUC held that Sterry Street failed to prove the reasonableness of the charges and affirmed the January 23, 2003 order.
Subsequent to the June 6, 2003 order, Sterry Street filed another motion for reconsideration to the PUC on June 16, 2003 to address the issue of the reasonableness of the charges. However, on October 16, 2003, PUC denied Sterry Street's motion, stating that Sterry Street "had sufficient opportunities to justify the `reasonableness' of the air bag rental fees in issue." (October 16, 2003 Order at 2.) Again, the January 23, 2003 order was affirmed. On November 4, 2003, Sterry Street filed this timely appeal to the Rhode Island Superior Court for relief from the aforementioned order.
 STANDARD OF REVIEW
General Laws § 42-35-15(g), which directs this Court in its review of a decision of the PUC on appeal, provides that:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, interferences, conclusions or decisions which are:
 (1) In violation of constitutional or statutory provisions
 (2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
The Superior Court reviews a decision of PUC pursuant to R.I.G.L. §42-35-15(g), which precludes a reviewing court from substituting its own judgment for that of the PUC in regards to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registryof Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Foster-GlocesterRegional School Committee v. Board of Review, Department of Labor andTraining et al., 854 A.2d 1008, 1012 (R.I. 2004) (citing Tierney v.Department of Human Services, 793 A.2d 210, 213 (R.I. 2002)). This court's review is limited to determining whether substantial evidence exists to support the PUC's decision. Newport Shipyard, Inc. v. RhodeIsland Commission for Human Rights, 484 A.2d 893, 897 (R.I. 1984); seealso Barrington School Committee v. Rhode Island State Labor RelationsBoard, 608 A.2d 1126, 1138 (R.I. 1992) (citing Blue Cross Blue Shieldv. Caldarone, 520 A.2d 969, 972 (R.I. 1987) ("This court is limited to an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision"). Substantial evidence is defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance."Id. Furthermore, if competent evidence on the record exists, this Court must uphold the PUC's decision. Nickerson v. Reitsma, 853 A.2d 1202, 1205
(R.I. 2004). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. Rhode Island Conflict of InterestCommission, 509 A.2d 453, 458 (R.I. 1986).
It is well settled in Rhode Island that when the legislature has entrusted an administrative agency with the administration and enforcement of a statute, that agency will be afforded great deference in interpreting a statute. In re Lallo, 768 A.2d 921, 926 (R.I. 2001) (citing In re Advisory Opinion to the Governor, 732 A.2d 55, 76 (R.I. 1999); Pawtucket Power Associates Limited Partnership v. City ofPawtucket, 622 A.2d 452, 457 (R.I. 1993); Defenders of Animals, Inc. v.Department of Environmental Management, 553 A.2d 541, 543 (R.I. 1989));Labor Ready Northeast, Inc. v. Department of Business Regulation,849 A.2d 340, 344 (R.I. 2004) (a court reviewing the agency's interpretation of the statute as applied to a particular factual situation must accord that interpretation "weight and deference as long as that construction is not clearly erroneous or unauthorized"). This Court recognizes that the Rhode Island legislature entrusted the PUC with the administration and enforcement of chapters 12 and 12.1. Thus, the PUC must be accorded deference when reviewing its decision.
 Reasonable Rates
1. Denial of the second motion for reconsideration
At the outset, Sterry Street argues that the PUC erred when it denied Sterry Street's motion for reconsideration. It is Sterry Street's contention that the first motion for reconsideration was limited to the issue of an arm's length transaction of renting equipment between two legitimate, active, and registered corporations. (Appellant's Brief at 4.) Sterry Street insists that the issue in the first motion for reconsideration was not the "reasonableness" of charges. Sterry Street also argues that the basis for the denial of the second motion for reconsideration was that the PUC deemed that the first reconsideration hearing was to have addressed the issue of reasonableness and that Sterry Street had ample opportunity to do so. Sterry Street further argues that the "reasonableness" of the charges was not even addressed in the PUC's decision. Thus, Sterry Street claims that it was denied an opportunity to address this issue to the Hearing Officer during the first motion for reconsideration.
Alternatively, the PUC avers that when it granted Sterry Street's first motion for reconsideration on February 17, 2003, it was granted on the grounds that it would "reopen this hearing to allow the Respondent, and all other Parties, to again address the reasonableness and propriety of these charges" and "for the purpose of receiving additional evidence and/or argument with respect to the grounds for reconsideration articulated in the Respondent's Motion and this Order." Thus, the PUC argues that Sterry Street had ample opportunities to justify the "reasonableness" of the air bag rental fees in issue during both the initial hearing and after Sterry Street's first motion for reconsideration was granted.
Pursuant to the Division of Public Utilities and Carriers, Rules of Practice and Procedure, Rule 31(d) permits a relief from order if
 "Upon motion of any party made not later than ten (10) calendar days after the date of the Division order the Hearing Officer or Administrator may amend his or her findings or make additional findings and may amend the order accordingly."
In the instant matter, a reading of the record shows that Sterry Street was indeed given more than enough chances to prove that their charges to Devon Cover were reasonable and not in violation of their tariff during the first and second hearings. A thorough reading of the PUC's order granting Sterry Street's first motion for reconsideration shows that Sterry Street had adequate notice of the issues that were to be discussed when the hearing would be reopened. This Court finds that the PUC did not abuse its discretion when it denied Sterry Street's second motion for reconsideration. Substantial due process rights of Sterry Street's have not been prejudiced.
2. Authority to regulate
Sterry Street argues that the PUC overstepped the authority given to them by the Rhode Island legislature when the PUC fined Sterry Street for charging Devon Cover for the rental of the air bags. Sterry Street further argues that the PUC does not have the authority to regulate charges that are not contained within the tariff. Specifically, Sterry Street contends that Part 3 of their tariff, otherwise known as the "rental clause," covers the cost of the rental of the airbags, "[a] charge equaling 120% of the provider's charge shall be assessed. All expenses of such nature will be advanced by the carrier and subsequently billed as a separate item or items on the carrier's towing bill." Sterry Street argues that the Hearing Officer disallowed the rental charges for the airbags in spite of the testimony that the airbags were in use that night, provided by Devon Cover's driver, Mr. Dave Hudson. Sterry Street does contend that although their tariff includes a "rental clause," there is no specific charge listed for the rental of the airbags. Thus, Sterry Street argues that if no charge was listed in the tariff filed with the administrator, then the decision of the Hearing Officer was erroneous because Sterry Street could not be in excess of a tariff that did not exist.
Alternatively, the PUC argues that pursuant to Title 39, Chapter 12 of the Rhode Island General Laws, it is mandated to investigate every complaint of an alleged tariff violation. The PUC asserts that once a complaint made in writing is submitted to the PUC, the Administrator may investigate such complaint. Consequently, the PUC argues that pursuant to § 31-12-4, it had the authority to investigate Devon Cover's complaint that Sterry Street had allegedly exceeded the charges listed in their tariff. Furthermore, it is the PUC's contention that if after notice and hearing, the Administrator determines that the carrier is in violation of the tariff provisions, § 39-12-4(c) requires the PUC to issue an order that will require the carrier to act in accordance with the terms of its existing tariff. As such, the PUC argues that it was incumbent upon them to investigate Devon Cover's complaints, conduct a hearing, and issue an order that ultimately found that Sterry Street had charged Devon Cover in excess of its tariff.
Title 39, chapter 12 authorizes the PUC to promulgate rules and regulations as it deems appropriate to assure adequate, economical, efficient service, and reasonable rates by common carriers of property. Chapter 12.1, the Towing Storage Act, specifically regulates those common carriers which operate towing-storage businesses. Furthermore, chapter 12.1 delineates to the PUC the power to protect the public from unreasonable rates for services rendered, especially when the power of selecting a towing company is in the purview of the police, without the public's consent, to clear hazardous conditions. Section 31-12.1-1 states in pertinent part that:
 "WHEREAS, The motoring public has a right, when delegating to law enforcement the selection of an operator in the towing-storage business, to expect the operator selected and responding will be competent;
 WHEREAS, The motoring public has a right when delegating to law enforcement the selection of an operator in the towing-storage business, to expect that the charges for the services to be rendered will be reasonable and compensatory, and that the operator is physically equipped in his or her business to function properly; and
 WHEREAS, The towing and storage of a vehicle without the owner's consent, as is the case in most police instigated tows, requires certain procedures to assure the owner that rights of due process of law are not violated."
Towing-storage operators who wish to be considered for police directed towing must obtain a certificate of public convenience and necessity. Sections 39-12-6, and 7. Section 39-12-11 requires that the carrier file with the PUC administrator "tariffs showing all the rates and charges for transportation, and all services in connection therewith. . . ." It is also clear from § 39-12-11 that the PUC has the authority to require carriers of property to comply with the filing of all tariffs. Implicit in the aforementioned section is the requirement that a carrier not only file a tariff, but that all rates should state with specificity the amount to be charged ("stated in lawful money of the United States"). Thus, once the tariffs are published and filed, the common carriers must comply with them:
 "No change shall be made in any rate, charge, classification, or any rule, regulation, or practice affecting the rate, charge, or classification, or the value of the service thereunder specified in any tariff of a common carrier by motor vehicle, except after thirty (30) days notice of the proposed change filed and posted in accordance with § 39-12-11."
Furthermore, pursuant to the general powers and duties of the administrator listed in § 39-12-4, the legislature specifically mandated the PUC to investigate any carrier who is not in compliance with this chapter. Section 39-12-4(c) in pertinent part reads:
 "Upon complaint in writing to the administrator by any person, organization, or body politic or upon his or her own initiative without complaint, the administrator may investigate whether any motor carrier has failed to comply with any provisions of this chapter, or with any requirements established pursuant thereto. If the administrator, after notice and hearing, finds upon any investigation that the motor carrier has failed to comply with any provisions or requirement, the administrator shall issue an appropriate order to comply the carrier to comply therewith."
Thus, in the instant matter, the PUC had the authority to investigate Devon Cover's complaint, probe into the allegations via a hearing on the matter of exceeding the tariffs, make a determination based upon the evidence presented in accordance with PUC rules and regulations, and order Sterry Street's compliance with those rules.
In addition, the PUC may penalize a carrier for any willful violation of any section of Chapter 12. Section39-12-36, permits the PUC to seek criminal sanction or civil penalties. The PUC in this matter chose to fine Sterry Street pursuant to § 39-12-36(b).
Said section reads:
 "The administrator may in his or her discretion in lieu of seeking criminal sanctions, impose upon its regulated common or contract carriers an administrative civil penalty (fine) in lieu of revoking or suspending the carrier's operating authority as conferred under this chapter. The fine shall not exceed one thousand dollars ($1,000) per each violation of the sections contained in this chapter or the division's rules and regulations promulgated thereunder."
Again, the General Assembly has specifically authorized the PUC to use its discretion in determining if a carrier who is deemed to have violated this statutory scheme should be penalized by a monetary fine. Any complaint made by Devon Cover was to be acted upon by the PUC, and if necessary, after notice and a hearing, the offending party was to be brought into full compliance with the statute that was breached. Thus, this Court finds that the PUC did not abuse its discretion in investigating Devon Cover's allegations of charges in excess of Sterry Street's tariff and the decision is not affected by error of law.
3. Applicable tariff
Sterry Street argues that the Hearing Officer erroneously mischaracterized the rental agreement between the Sterry Street Rhode Island corporation, and the Sterry Street Massachusetts corporation. Both corporations, Sterry Street asserts, are in good standing with the laws of each state. Sterry Street explains that the Rhode Island Corporation is under a registered fictitious name used by Sterry Street Auto Sales, Inc., with its corporate offices in Pawtucket, Rhode Island. Sterry Street further explains that there is also a Sterry Street Auto Sales, Inc., incorporated in accordance with Massachusetts corporation laws with its corporate offices in Attleboro, Massachusetts. Sterry Street avers that the Rhode Island Corporation tows for the Pawtucket Police Department and the Rhode Island State Police Departments with trucks and equipment located in Pawtucket, Rhode Island. Sterry Street further asserts that the Massachusetts corporation tows for the Attleboro Police Department and the Massachusetts State Police with trucks and equipment located in Attleboro, Massachusetts.
Alternatively, the PUC argues that Sterry Street failed to apply its tariff properly, and thus, imposed charges in excess of the tariff then in effect. The PUC does admit, however, that the tariff did allow Sterry Street to charge 120% of its cost of leasing equipment it did not have. However, the PUC contends that the Hearing Officer found that Sterry Street was leasing equipment from its Massachusetts affiliate, alleging that this corporation "enjoyed a unity of identity and purpose" with the Rhode Island corporation. The PUC further asserts that the Hearing Officer concluded that the tariff was written in a manner that would allow Sterry Street to lease equipment from its Massachusetts corporation for the sole purpose of increasing its profit without having the resulting charge to the consumer reflect the actual cost to Sterry Street of providing the service. Finally, the PUC argues that the Hearing Officer concluded that the rental provision of the tariff was a "sham transaction" allowing Sterry Street to evade the requirement of setting out its intended charges in the tariff subject to the Administrator's approval.
The PUC further argues that Sterry Street was required by the Rhode Island State Police to either own or subcontract an air pump in order to maintain its place on the Rhode Island State Police Tow and Recovery list. Thus, it is the PUC's position that because an air bag is a necessary, standard piece of equipment used in vehicle recovery, Sterry Street should have been required to list an explicit charge for this required and foreseeable service. As such, the PUC claims that the Hearing Officer correctly disallowed the charges relating to the airbag because they were not specifically included in the tariff. In addition, the PUC avers that when Sterry Street leases its equipment from its Massachusetts corporations, and then imposes another 20% charge on top of what was paid for the lease, the reasonable inference that can be drawn is that a built in profit is received by Sterry Street. Further, the PUC contends that it is not unreasonable to expect that a consumer in this particular situation would object to paying a profit on two transactions, to essentially one company, for one service.
As stated earlier, pursuant to § 39-12-11, the PUC has the authority to require a carrier to publish its tariffs. However, § 39-12-12 clearly provides that it is the "duty of the carrier of property by motor vehicle to establish, observe, and enforce just, reasonable, and reasonably compensatory rates, charges, and classifications, and reasonable regulations and practices. . . ." The General Assembly has given the PUC, by way of the Towing Storage Act, § 39-12.1-1, the well-defined responsibility to protect the public from unreasonable charges at the hand of the carrier, especially in instances where the towing service has been initiated by law enforcement. See Sterry StreetTowing, Inc. v. Division of Public Utilities andCarriers, 2003 R.I. Super. LEXIS 116, *7 (the Superior Court has noted that "the purpose of the Act is to assure the owners of non-consensually towed vehicles of due process of law through the implementation of certain procedures and the establishment of set rates for services."). Furthermore, the PUC has the duty to protect the public from carriers who charge customers in excess of the tariff and not in accordance with the strictures of the aforementioned sections. Section 39-12-8. Here, the Hearing Officer determined that the applicable tariff did not provide for the assessment of charges for the rental of airbags. The Hearing Officer also found that although Sterry Street Auto Sales, Inc. was incorporated in Rhode Island and filed the fictitious name "Sterry Street Towing" in 1999, Sterry Street's charter was revoked in 1991. Consequently, the Hearing Officer held that the charges of the rental of the airbags and all services related to the airbag amounted to a violation. See Labor Ready Northeast, Inc. v.Department of Business Regulation, 849 A.2d 340, 344
(R.I. 2004) (it is well settled that a reviewing court must give deference to an agency's interpretation of a statute as long as it is not clearly erroneous or unauthorized.) Since Chapter 39 does not permit a common carrier to charge for services not described in its tariff, Sterry Street's imposition of excess charges was in clear contradiction to the Chapter. Thus, the decision of the PUC in regard to this charge was not clearly erroneous or affected by error of law.
 Credibility
Sterry Street further argues that the decision of the Hearing Officer was erroneous when she disallowed charges for the rental of airbags that were used to upright the tractor trailer. Specifically, Sterry Street argues that there was sufficient evidence to prove that the airbags were in use that night. However, it is Sterry Street's contention that the Hearing Officer failed to properly consider the testimony of the driver of the tractor trailer, Mr. Hudson, who explained that he saw two out of three trucks being utilized, and that the airbags were "doing most of the work." (Tr. at 60.) Rather, Sterry Street contends that the Hearing Officer readily believed the testimony of the police officer on duty, Lieutenant Giardina, who stated that all trucks and equipment that were present were utilized. (Tr. at 35, 41-42.)
Alternatively, the PUC stated in its order that it was the testimony of Mr. Martins that was not credible. Especially, surrounding the issue of the rental of the airbags from the Massachusetts corporation, the Hearing Officer noted that Mr. Martins' testimony contained "significant discrepancies." (Decision at 8.) The Hearing Officer further noted that Mr. Martins was mistaken regarding his status as president of each of the corporations. Id. at 9. The Hearing Officer found that Sterry Street Towing, the Rhode Island corporation, was revoked in 1991; thus Mr. Martins could therefore no longer be president of this corporation. Coupled with this assessment, the Hearing Officer found that there was no separate provision in Sterry Street's tariff for the use of air bag recovery.
It is clear from a reading of the PUC's decision that the Hearing Officer weighed all the evidence presented. Even though the testimony of Lieutenant Giardina and Mr. David Hudson were contradictory, she considered the testimony of both of them, along with that of Mr. Martins. The Administrative Procedure Act precludes the reviewing court from substituting its own judgment for that of the Hearing Officer in regards to the credibility of witnesses. Kachanis v. Board of Review,Department of Employment and Training, 638 A.2d 553, 556
(R.I. 1994); Costa v. Registry of Motor Vehicles,543 A.2d 1307, 1309 (R.I. 1988); Carmody v. Rhode IslandConflict of Interest Commission, 509 A.2d 453, 458
(R.I. 1986). As such, it is within the purview of the PUC's Hearing Officer to rely on the testimony of one witness over the other, as she is in a better position to observe the demeanor of the witnesses and assess the truthfulness of their testimony. In this matter, the Hearing Officer chose to believe Lieutenant Giardina's testimony over that of Mr. Hudson's and Mr. Martins' testimony. Accordingly, the PUC's decision is based upon the reliable, probative, and substantial evidence on the record.
 Conclusion
Upon review of the entire record, this Court finds that the PUC's decision was made upon the reliable, probative, and substantial evidence on the record and was not affected by error of law or an abuse of discretion. Substantial rights of the Appellant have not been prejudiced. Therefore, the decision of the PUC is affirmed. Counsel shall submit the appropriate judgment for entry.